JACOB T. MOLL AND JUDITH S. MOLL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2208–71. Filed February 2, 1972.

Jacob T. Moll, pro se.
*Eugene H. Flood*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $663.58 in petitioners' Federal income tax for the year 1969.

At issue is whether petitioner Jacob T. Moll is entitled to exclude from his gross income $3,600 of his pay and allowances as an Air Force officer which was earned while completing his senior year in medical school and serving as an intern at Wilford Hall Medical Center, Lackland Air Force Base, on the ground that he was the recipient of a scholarship or fellowship under section 117, I.R.C. 1954.

### FINDINGS OF FACT

Many of the facts have been stipulated and are so found.

Jacob T. and Judith S. Moll, are husband and wife whose legal residence was Tacoma, Wash., when they filed their petition in this proceeding. They filed a joint Federal income tax return for the year 1969 with the district director of internal revenue at Austin, Tex.

Jacob T. Moll (herein called petitioner) received a bachelor's degree in biology from Randolph-Macon College in June 1965. In September 1965 he entered medical school at the Medical College of Virginia at Richmond, and received an M.D. degree from that institution on June 6, 1969. During the summer of 1969 he was issued a license to practice in Virginia, upon passing a State examination to qualify. He was authorized to write prescriptions for ordinary medications. This authorization was honored in Texas.

On June 1, 1968, petitioner was commissioned a second lieutenant in the U.S. Air Force and enrolled in its Senior Medical Student Program. He was on active duty during the summer months of 1968 and drew the pay of a second lieutenant from June 1, 1968, until his graduation from medical school on June 6, 1969. On the latter date

the petitioner was promoted to the permanent rank of first lieutenant but with the temporary rank of captain. During the remainder of 1969 the petitioner drew the pay and allowances of a line captain, but not the premium pay of a medical doctor. In computing length of service for pay purposes, petitioner was granted credit, as are all military physicians, for time spent as an intern as well as credit for the 4 years spent in medical school.

From June 1, 1968, through June 6, 1969, petitioner drew the pay, allowances, and subsistence of a second lieutenant. On a monthly basis these amounts were base pay of $474, allowances of $110, and subsistence of $47. On an annual basis petitioner's pay, allowances, and subsistence as a second lieutenant amounted to $7,572.

From June 7, 1969, through December 31, 1969, petitioner drew a captain's monthly base pay of $740 and subsistence of $47. During that period family quarters were furnished to him by the Air Force, and therefore he did not draw the monthly allowance of $120 then paid to officers unable to obtain family quarters on the base. On an annual basis petitioner's pay, allowances, and subsistence as a captain would have amounted to $10,884 if he had obtained living quarters off the base.

Petitioner's status in the U.S. Air Force from the date of commissioning as a second lieutenant on June 1, 1968, was that of an officer on extended active duty. During the time petitioner was attending medical school in his senior year and during the year of internship he obtained benefit of an annual accrual of 30 days' leave. He was, however, unable to take the full amount accrued.

In the event petitioner elected to make the U.S. Air Force his career and retire at the end of 20 years service, he would receive full credit toward retirement for the senior year in medical school (12 months) and the 1 year spent in the Air Force internship program.

On July 1, 1969, petitioner started serving his internship at Wilford Hall Medical Center, Lackland Air Force Base, Tex. Petitioner completed his internship at Wilford Hall Medical Center on July 7, 1970, and started flight surgeon training at Brooks Aerospace Medical Center, San Antonio, Tex., on July 12, 1970.

Upon receipt of a commission as a second lieutenant in the Air Force, petitioner agreed to a 1-year service commitment in addition to the normal 2-year service requirement of doctors who are drafted. The 3-year service commitment was to begin upon his completion of the internship on July 7, 1970. Time spent in the Senior Medical Student Program in 1968 and 1969 and time spent as an intern in 1969 and 1970 did not count toward fulfillment of the total 3-year commitment.

Under the Senior Medical Student and Military Internship pro-

grams in which petitioner participated, his overall active duty service commitment in the Air Force was 5 years. This consisted of 1 year as a senior medical student, 1 year as an intern, and 3 additional years after completion of the military internship.

The U.S. Air Force offers a number of training programs, including Flight Training, Technical Training, Medical Service Corps, Veterinary Corps, Biomedical Sciences Corps, Nurse Corps, Fellowships, Scholarships and Grants, and Physician and Dentist Training. Participants in each of the programs incur an Active Duty Service Commitment. In general, an Active Duty Service Commitment requires a career officer to remain on active duty for a specified period of time in order to insure a reasonable return for the expenditure of public funds, provide a resource of trained officers to meet mission requirements, and permit planning for future requirements for training, procurement, et cetera. Petitioner was under the Physician and Dentist Training program.

The Air Force offers a training program which includes fellowships, scholarships, and grants. The program covers such training as Air Force Institute of Technology (AFIT) professional education with industry, a Special Masters program, Operation Bootstrap, Legal Education, Minuteman Missile Combat Crew Education, Titan Missile Course, Minuteman Missile Course and another category described as fellowship, scholarship, or grant. The active duty service commitments incurred by participants in such programs depend generally upon the date of entry and the period of training in the program.

During 1968 and 1969 the U.S. Air Force was in need of doctors, and the Medical Student program was designed to attract medical students to get them interested in medical careers in the Air Force. The Air Force could, however, have obtained the required medical personnel through the regular draft program applicable to medical doctors. Drafted doctors were required to serve a minimum term of 2 years.

Wilford Hall is an Air Force general hospital with teaching and research facilities designed to fulfill the guidelines of an internship program, as laid down by the American Medical Association. It is the only Air Force hospital which is under and funded through the Air Force Systems Command, the research and development command. It is a medical teaching center with a permanent staff which can adequately perform the operational functions of the hospital without the assistance of interns. However, the residency and internship training programs at Wilford Hall Medical Center do not vary to any extent from programs in private civilian hospitals.

Wilford Hall Medical Center operates a 1,100-bed general hospital and it provides both inpatient and outpatient medical services. The

hospital furnishes full scale medical care not only to the military population, dependents, and retired personnel in the San Antonio area, but also to patients with complex diagnostic and treatment problems who are referred from Air Force installations elsewhere in the United States and overseas. The Center is staffed by about 750 officers, 325 of which are physicians. Of the 325 physicians there are approximately 150 residents and 50 interns. In a recent representative year the average occupied beds were 912; there were 646,372 outpatient visits, 20,667 admissions, 1,380 deliveries, and 186 autopsies.

The primary mission of Wilford Hall Medical Center is to provide base medical services for Lackland Air Force Base, perform specialized treatment center functions, conduct professional education and technical training, and to engage in clinical research. Just as any medical center, it exists for the purpose of treating the sick and training new physicians.

During the year of petitioner's internship at Wilford Hall, he rotated each month into different fields of clinical work. Such fields included the following: Gastro intestinal, pulmonary, hematology, pediatrics, general medicine, neurology, emergency cases, cardiology, infectious diseases, renal metabolic, and ophthalmology.

The internship program at Wilford Hall Medical Center follows the strict guidelines laid down by the American Medical Association and is approved by it. Any deviation from A.M.A. guidelines and standards would result in Wilford Hall being decertified as a teaching institution and would render the teaching program useless.

Wilford Hall Medical Center offers straight internships in general surgery and internal medicine. In addition, it offers "rotating" types of internships with emphasis on internal medicine, surgery, obstetrics and gynecology, or pediatrics. A limited number of "rotating" internships with emphasis on pathology, psychiatry, radiology, or anesthesiology are available. The intern has some choice in those available, but the choice must be within the hospital's ability to provide adequate training in the elected specialty.

Petitioner's activities, while acting as an intern, included, among other duties, giving physical examinations to patients; preparation of medical histories; and writing orders for laboratory work. A resident physician or staff member monitored or reviewed the intern's work and made changes to the intern's orders if required. In the clinics the petitioner performed similar activities but the degree of supervision was less than in the wards. As an intern the petitioner treated patients in the clinics. He worked in the emergency section of the Wilford Hall Medical Center and did minor emergency surgery.

During the year 1969 the petitioner was paid $7,329.03 by the U.S.

Air Force. From that amount the Air Force withheld $1,032.57 for income taxes and $351.82 for FICA. On petitioner's 1969 return the gross amount was reported on line 11 as wages, salaries, tips, etc. On line 15b of the return, an exclusion of $3,600 (12 months at $300 per month) was claimed under the legend "Graduate Student Status Receiving Stipend." In the statutory notice of deficiency sent to petitioners, the respondent restored to income the $3,600 amount excluded on the ground that the sum received from the Air Force did not constitute a scholarship or fellowship grant.

All amounts paid to petitioner by the Air Force in 1969 while serving as a senior medical student and an intern represented compensation for either present or future services. The pay and allowances received by petitioner in 1969 constituted salary or wages paid to an officer and employee of the Air Force.

## OPINION

This is another of the many recent cases in which intern or resident physicians have attempted to exclude part of their income as a fellowship or scholarship grant under section 117, I.R.C. 1954. If any one of the conditions set forth in section 1.117–4(c),[1] Income Tax Regs., is present in this case, the claimed exclusion cannot be allowed. The validity of the regulations under section 117 has been upheld by the Supreme Court of the United States. *Bingler* v. *Johnson*, 394 U.S. 741 (1969).

At the trial of this case the petitioner claimed he was entitled to the full $3,600 exclusion in 1969. In his brief he concedes that none of the amount he received as a senior medical student during the first 6 months of 1969 is excludable. This leaves in dispute only the

---

[1] Sec. 1.117–4 Items not considered as scholarships or fellowship grants.

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

claimed exclusion of $300 per month during the last 6 months of that year when the petitioner served as an intern at the Air Force hospital, Wilford Hall Medical Center.

Petitioner contends that $300 per month exclusion claimed during his internship constituted a fellowship for the purpose of furthering his education. He argues that no additional obligation to perform future services was incurred by the internship; that he did not receive the professional pay of a physician during the internship; and that his presence as an intern was not required to fulfill the hospital's function of providing patient care.

Respondent's primary position is that the amount paid by the Air Force was in return for petitioner's promise to serve 3 years in the Air Force, and hence a quid pro quo. Secondarily, respondent argues that while serving as an intern the petitioner was compensated for services performed and rendered primarily for the benefit of patients and the hospital. And finally, respondent contends that the amount received by petitioner represented the base pay and allowances of a commissioned officer employee of the Air Force, and therefore the provisions of section 1.117-4(b) relating to allowances to members of the Armed Forces specifically excludes the amounts received from fellowship or scholarship treatment.

The first two grounds advanced by respondent are sound and we agree with them. As to future employment services, this case is controlled by the quid pro quo rule of *Bingler v. Johnson, supra.* Upon receipt of an Air Force commission and entry into the Senior Medical Student Program the petitioner agreed to serve 3 years after completion of the internship. What we have, in essence, is an agreement between petitioner and his employer, the Air Force, whereby the employer paid petitioner as a second lieutenant during his final year of medical school and paid him at the rate of a captain's pay during the internship, all in return for petitioner's promise of 3 years future service. It is a clear-cut case of compensation for future services.

In his testimony the petitioner attempted to draw a distinction between the senior year student status and the remaining 1969 period as an intern. The distinction is without merit. Upon graduation from medical school petitioner was required to accept reappointment as first lieutenant in the Reserve of the Air Force Medical Corps, and when he accepted the military internship he remained on active military service with the temporary grade of captain. He had an option to take the military or a civilian internship. He chose the former and remained on active military duty. It is what petitioner did that governs the situation and not what he could have done. By accepting the rank of captain, the petitioner obtained the benefit of a known

rate of pay during the military internship. If he had elected the unsponsored civilian internship, his pay would have been determined by the hospital where the internship was served. Upon acceptance of the military internship, the petitioner received the consideration of a higher rank, which indicates a quid pro quo. Despite the suggested distinction, we view the entire program of senior medical student and military internship as a "package deal" wherein petitioner received military pay for the entire period in return for his promise to serve a specified number of years in the Air Force. That he, as well as many others, may have been subject to draft by the military services is not relevant to the issue. Therefore, it is plain that payments made to petitioner during 1969 as an intern represented compensation for future services and cannot be excluded from gross income under section 117.

As for the performance of present medical services for compensation, the factual situation here is somewhat similar to that involved in *Irwin S. Anderson*, 54 T.C. 1547 (1970). In that case the taxpayer served an internship in a hospital which was administered for a time by an agency of the Federal Government, as was Wilford Hall Medical Center. The duties of interns listed in the Findings of Fact in *Anderson* are similar to the duties of petitioner in this case. The internship program at Wilford Hall was fully qualified by all A.M.A. standards, and interns are assigned patients as required by the A.M.A. in the fields in which they are being trained. Thus, an intern who spends 1 year at Wilford Hall Medical Center in 12 different training fields would be assigned patients of all 12 types. Since the petitioner was assigned patients in a number of different fields and performed the duties stipulated, it is obvious that he performed services for the patients and the hospital grantor.

Wilford Hall Medical Center, in a representative year, had average occupied beds of 912. It admitted 20,667 patients or an average of more than 56 per day. In addition, it handled 646,372 outpatient visits or an average of 1,700 per day. When it is stated that the mission of Wilford Hall is "quality medical care for all" and that it furnished full-scale medical care to the military population, dependents, and retired personnel in the San Antonio area, it must be concluded that its primary purpose was treatment of patients and not the training of physicians.

The ratio of practicing physicians to residents and interns at Wilford Hall Medical Center is 125 to 200 out of a total physician staff of 325. In view of the daily bed patient load and outpatient visits, we think it is reasonable to conclude that the Center was understaffed and that the residents and interns rendered substantial service to the patients. It is true that the interns obtained knowledge, training, and

experience. But they also rendered service to the patients. Although it is stipulated that Wilford Hall could "adequately" perform the operational functions of the hospital without the assistance of interns, no doubt the quality of service would suffer. The hospital probably could not have continued to care for as many patients as effectively as it could with the help of the interns. It is stipulated that petitioner rendered services to patients and he so acknowledged in his testimony.

His activities, while serving as an intern, included, among other duties, giving physical examinations to patients; preparation of medical histories; and writing orders for laboratory work. A resident physician or staff member monitored or reviewed his work and made changes in his orders if required. In the clinics the petitioner performed similar activities but the degree of supervision was less than in the wards. As an intern he treated patients in the clinics. He also worked in the emergency section of the Wilford Hall Medical Center and did minor emergency surgery.

In our judgment all the amounts received by petitioner as an intern were primarily for services rendered to and for the benefit of Wilford Hall in its mission of treating patients and for services which were subject to the direction and supervision of the hospital. See *Aloysius J. Proskey*, 51 T.C. 918 (1969) ; *Frederick Fisher*, 56 T.C. 1201 (1971).

Several other facts show that the petitioner's position as a captain in the Air Force during his internship was that of an employee. The full amount paid to him was reported by the Air Force as income on Form W-2. Income and FICA tax was withheld. He was paid at the customary rate of one holding similar officer rank. He accrued the same annual leave as other members of the armed services. He was on active duty as an Air Force officer. He received a military monthly allowance and subsistence. He received a dislocation allowance or moving allowance. He lived in family quarters furnished by the Air Force. He performed duties subject to supervision of a hospital resident or staff member. He was eligible for participation in a retirement plan, receiving credit for time served in 1969, and he received longevity credit for pay computation purposes for the period of his senior year in medical school together with prior years in medical school and the year of internship.

For the reasons stated herein we sustain the respondent's determination. Accordingly,

*Decision will be entered for the respondent.*