ESFANDIAR KADIVAR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kadivar v. Commissioner
Docket No. 1302-72.
United States Tax Court
T.C. Memo 1973-95; 1973 Tax Ct. Memo LEXIS 190; 32 T.C.M. (CCH) 427; T.C.M. (RIA) 73095; April 24, 1973, Filed Esfandiar Kadivar, pro se. Rudolf L. Jansen, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined deficiencies in the 1970 income tax liability of Esfandiar *191 Kadivar in the amount of $3,137.58. There are 3 issues: (1) Whether petitioner properly excluded from income $3,600 of the combined payments he received during 1970 from the hospital where he completed a medical internship and from the hospital where he commenced a surgical residency program. 2 (2) Whether petitioner may deduct $976 for travel expenses outside the United States; petitioner claimed a deduction of $3,500 for such expenses in his return, but conceded that he properly could claim only $976 of that amount. (3) Whether petitioner can properly deduct $1,416 for travel expenses within the United States; petitioner claimed $1,665 and the Commissioner allowed $249 of that amount in the statutory notice. FINDINGS OF FACT Some of the facts are stipulated and are so found. On the date he filed the petition in this case, Esfandiar Kadivar was a resident of Cincinnati, Ohio. He filed an individual income tax return for the calendar year 1970 with the district director of internal revenue at Cincinnati, Ohio. In 1967 petitioner received the degree of Doctor of Medicine from Tehran University Medical School, Tehran, Iran. After serving as a licensed physician *192 in the armed forces of Iran, he came to this country under a certificate of eligibility for an exchange visitor granted by the United States Department of State. Because he lacked the credentials to practice medicine in the United States, he commenced an internship program at the Miami Valley Hospital, Dayton, Ohio 3 on May 12, 1969. He completed the internship on June 27, 1970 and 4 days later began a four year residency program in surgery at Good Samaritan Hospital, Cincinnati, Ohio.During 1970 Kadivar received payments of $4,673.41 and $4,242.86 from Miami Valley and Good Samaaritan respectively, as disclosed in the W-2 Forms furnished petitioner by the hospitals. Petitioner earned $11,185.50 at St. Luke's Hospital of Campbell County, Kentucky. He did not exclude that amount from income. On line 17 of the 1970 Form 1040, petitioner entered an adjustment to income in the amount of $3600, the maximum allowable exclusion under section 117, Internal Revenue Code of 1954, [1] for amounts received as a scholarship or fellowship by an individual who is not a candidate for a degree. The question is whether the amounts paid petitioner by Miami Valley and *193 Good Samaritan were a scholarship or fellowship grant, or whether such amounts were compensation for services rendered by petitioner to the hospitals. 4 The intern and resident programs have substantially identical goals and objectives and in our experience with cases of this nature are unexceptional. At Miami Valley, petitioner received $650/month for the first 1-1/2 months of work; thereafter he received $750. At Good Samaritan he was paid in accordance with a pay-scale that provided $10,000 per annum for first year residents; he now receives $11,260 as a third year resident. Kadivar had no discussion with representatives of either of the hospitals concerning a fellowship grant. The payments he received were not dependent upon his financial needs. In addition to these payments, petitioner received various perquisites such as free meals while on duty, his uniforms, free laundry service, and professional liability insurance; at Good Samaritan premiums for Blue Cross Hospitalization insurance, fees for membership in the academy of medicine, and certain professional meeting *194 expenses were paid on his behalf. At both hospitals he was entitled to 2-weeks paid vacation and sick leave. At Miami Valley petitioner generally worked from 7 a.m. until 5 p.m. and did night duty every third night. At Good Samaritan he worked approximately 120 hours average per week 5 in accordance with a published schedule of rotation. The residency program was designed to rotate the residents into other hospitals in Cincinnati. Petitioner has rotated at Providence Hospital and Longview Hospital and has performed the same functions at those institutions as he had at his home base at Good Samaritan. Both Miami Valley and Good Samaritan are organizations that satisfy the conditions for exclusion set forth in section 117(b) (2) (A). The former is an 800 bed nonprofit community hospital. During 1969 it discharged 25,859 inpatients and had approximately 80,383 outpatient visits. The constitution of Miami Valley recites four objectives of the hospital, each oriented toward the care of the sick and injured and the promotion of the general health of the community, including the carrying on of scientific research related to the care of the sick insofar as the trustees of *195 the hospital deem feasible. Good Samaritan has a capacity and experiences a volume of patronage comparable to that of Miami Valley. Similarly it is oriented toward patient care and carrying on medical research incident thereto. 6 At Miami Valley petitioner received training in various medical specialties, including surgery, internal medicine, obstetrics, gynecology, pathology, and radiology. Both hospitals limited petitioner's authority and responsibility for patient management, and made him suject to the direction of attending physicians in the case of private patients and staff physicians at the hospital in the case of clinic patients. During 1970 Kadivar attended a 4-day medical meeting in Chicago, Illinois and was reimbursed by Miami Valley for the expenses he incurred. He received no reimbursements from Good Samaritan that year for any medical meetings he attended. On June 1, 1970, petitioner departed from Atlanta, Georgia on a 14-day "Orient Adventure" trip which was sponsored by the Southern Medical Association. Kadivar continued to draw a salary from Miami Valley as he had not theretofore used up his paid vacation time. After the vacation was over there were *196 just a few days until his internship was to be completed. Travel arrangements for the "Orient Adventure" were handled by International Travel Advisors, Inc. (Intrav). The object and design of the trip was to combine travel to faraway cities such as Hong Kong, BCC, Kyoto, Bangkok and Tokyo 7 with 5 medical seminars each of one hour's duration to be held in tourist hotels. Three seminars were held in Hong Kong and 2 in Tokyo. Kadivar signed attendance sheets at all of these. He also made an optional side trip to Expo 70 in Kyoto. No seminar was conducted there. At the conclusion of the "Orient Adventure" trip, petitioner received a "Certificate for Continuing Education in Medicine." Neither Miami Valley nor Good Samaritan increased Kadivar's stipend as a result of his receipt of the certificate. Petitioner incurred costs for single accommodations of $976 (no part of which was allocated by Intrav to the seminars). This charge defrayed the costs of air fare, hotel accommodations, meals, a special escort, transportation to and from hotels and tips. The facts pertaining to Kadivar's claim of a deduction for expenses for travel within the United States are as follows. During *197 1970 petitioner visited various hospitals, and attended meetings and conferences at those hospitals, in order to "find out how the education is in those hospitals." Petitioner denies that these trips were taken for job-hunting purposes. One of the trips was the aforementioned 4-day trip 8 to Chicago, which was reimbursed by Miami Valley and allowed as a deduction by the Commissioner in the statutory notice. ULTIMATE FINDINGS 1. The amounts of $4,673.41 and $4,242.86 received from Miami Valley and Good Samaritan Hospitals in 1970 constituted compensation for services rendered by petitioner. 2. The overseas travel expense in the amount of $976 was not incurred in any activity related to his trade or business. OPINION A review of the many recent cases on the subject of scholarships and fellowships indicates that petitioner's stipends do not qualify for the section 117 exclusion.We have often cited section 1.117-4(c), Income Tax Regs., which is addressed to items that are not considered scholarships or fellowship grants. If the payments in question are compensation for services or for services which are subject to the supervision of the grantor then they may not be *198 excluded from income; moreover, even though the payments enable an individual to pursue studies, the primary purpose of the studies must be to further the education and training of the recipient if the payments are to be considered 9 amounts received as a scholarship or fellowship grant. See Aloysius J. Proskey, 51 T.C. 918, 923 (1969); Irwin S. Anderson, 54 T.C. 1547 (1970). With regard to internship and residency programs, we have stressed facts such as the withholding of income tax at the source from the stipend, a connection between the amount of the annual stipend and the recipient's number of years of service at the grantor's institution, a large number of physicians comprising the hospital staff, a large volume of patients treated at a hospital, the granting of paid vacation privileges, free hospitalization insurance and the like as being more consistent with an employment relationship than a scholarship or fellowship arrangement. Proskey, supra; Anderson, supra; Jerry S. Turem, 54 T.C. 1494 (1970); Jacob T. Moll, 57 T.C. 579 (1972). See also Parr v. United States, 469 F.2d 1156 *199 (C.A. 5, 1972). All the indicators noted in those cases militating against deductibility are present in our case. Further, the exigent circumstances that were present in Louis C. Vaccaro, 58 T.C. 721 (1972) and Frederick A. Bieberdorf, 60 T.C. (1973) we think are absent here. 10 Section 1.162-2(b) (1), Income Tax Regs., provides that if a taxpayer travels to a destination and there engages in both business and personal activities, the travel expenses are deductible only if the trip is related primarily to the taxpayer's trade or business. If petitioner's "Orient Adventure" trip was primarily related to his business of being a hospital medical staff employee, then the Commissioner would still have had authority to allocate petitioner's expenses between business and pleasure under section 274(c). However, we agree here with the Commissioner that petitioner's voyage was primarily for pleasure. The few hours spent at brief medical seminars do not convert what was in all other respects a vacation into a business trip. See Patterson v. Thomas, 289 F.2d 108 (C.A. 5, 1961). Petitioner's claim for travel expenses incurred within the United States is *200 also without merit. We are without evidence that would indicate a business purpose for his visits to several hospitals. Petitioner told us he was not looking for new employment, and we know little more. In the record before us, there is no substantiation, for 11 example, of the number of trips taken, or of total miles traveled, nor the dates on which expenses were incurred, although these matters are all part of petitioner's burden. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated. ↩