DENNIS DALE BRENNEISE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brenneise v. Commissioner
Docket No. 5019-72.
United States Tax Court
T.C. Memo 1974-1; 1974 Tax Ct. Memo LEXIS 318; 33 T.C.M. (CCH) 1; T.C.M. (RIA) 74001; January 7, 1974, Filed Dennis Dale Brenneise, pro se. Richard H. Gannon, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioner's Federal income tax for the calendar year 1969 in the amount of $357.81. The sole question presented is whether petitioner may exclude, under section 117(a) of the Internal Revenue Code, [1] certain payments made to him during the year in issue by the United States Department of Health, 2 Education and Welfare (HEW) while he served as a resident pharmacist in a United States Public Health Service Hospital's residency program in pharmacy. FINDINGS OF FACT
*319 Some of the facts have been stipulated and are so found. Dennis Dale Brenneise (hereinafter called petitioner) resided at Huntington Beach, California, at the time he filed his petition herein. Petitioner was graduated from the University of California School of Pharmacy with a Doctor of Pharmacy degree in 1968, and almost immediately applied for and received an appointment from HEW as a hospital pharmacy resident in the commissioned corps of the Public Health Service (USPHS). USPHS is one of the uniformed services of the Federal Government and upon his appointment petitioner achieved a rank equivalent to Lieutenant, J.G. in the United States Navy or First Lieutenant, United States Army. His stipend was less, however, than the pay he would have received had he been appointed as a staff pharmacist. Petitioner's appointment to the USPHS Hospital at Staten Island, New York, commenced in July 1968, and continued for one year. This was a general hospital with the primary function of providing a full range of medical services to the 3 community it served. However, its residency program in pharmacy was accredited by the American Society of Hospital Pharmacists and was *320 considered a training program. During his residency at the Hospital petitioner received both formal and on-the-job training. He participated in seminars and observed staff pharmacists at work. However, he also served tours of duty in the Hospital's pharmacies. It is stipulated that while at the Hospital petitioner "spent less than half of his time performing services ordinarily performed by staff pharmacists." At the time petitioner was appointed, the chief of the Hospital's pharmacy service issued a memorandum scheduling his activities on an almost daily basis for the entire year. This memorandum is 11 typewritten pages long and prescribes such activities as orientation, administration, bulk compounding, out-patient service and in-patient service. During the first six months of the year in issue petitioner's gross wages as a resident were $2,395.80. Federal income tax, FICA tax and state income tax were all withheld from this amount. In his application for an appointment with the USPHS petitioner agreed to serve for a period of two years, and 4 after completing his year's residency at the Staten IslandNew York Hospital he was transferred to a USPHS Hospital in Pawnee, *321 Oklahoma. Here he fulfilled this undertaking by serving as a staff pharmacist. By amended return for the year in issue petitioner sought to exclude $1,800 of his 1969 wage or stipend under section 117(a) as limited by (b) (2) (B) (limit of $300 per month while not a candidate for a degree). Respondent's determination disallowed such claimed exclusion as follows: "No exclusion is allowable for amounts paid as compensation for services (past, present or future) or primarily for the grantor's benefit. Payments for services as a trainee benefiting the employer are taxable." OPINION Section 117 of the Code provides in pertinent part that the gross income of an individual does not include any amount received as a scholarship or as a fellowship grant. Section 1.117-4, Income Tax Regs., provides in pertinent part as follows: The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * 5 (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. * * *, if such amount represents either compensation for past, present, or future employment services *322 or represents payment for services which are subject to the direction or supervision of the grantor. The above regulation was considered for the first time by the Supreme Court in 1969 in the case of Bingler v. Johnson, 394 U.S. 741, which case involved an employee of Westinghouse Electric Corporation who was appointed to and paid for participating in the Westinghouse Bettis (Atomic Power Laboratory) Fellowship and Doctoral Program. Shortly after the concerned employee accepted this appointment, Westinghouse imposed upon the program that all recipients would be obligated to return to the employ of Westinghouse at the completion of the program for a period of at least two years. Thus the concerned employee signed no agreement as to the two-year return but was formally advised that he was "expected" to return and he in fact honored that "obligation." In upholding the validity of the regulation the Supreme Court said 1.c. 750, 751, 757 and 758: "[We] do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the *323 enforcement" of the Internal Revenue Code. * * * 6 Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial quid pro quo from the recipients. * * * And, most importantly, Westinghouse unquestionably extractd a quid pro quo. The respondents not only were required to hold positions with Westinghouse throughout the "work-study" phase of the program, but also were obligated to return to Westinghouse's employ for a substantial period of time after completion of their leave. The thrust of the provision dealing with compensation is that bargained-for payments, given only as a "quo" in return for the quid of services rendered - whether past, present, or future - should not be excludable from income as "scholarship" funds. [Footnote omitted. Under the facts of the instant case it is crystal clear that petitioner's stipend was primarily for the benefit of the grantor. The compensation paid was for present as well as for future services and those services were subject *324 to the express, detailed and lengthy direction or supervision of the grantor. The 11-page long memorandum assigned regular administrative duties for performance by petitioner, required that he bulk compound medicines for use in the hospital and also required him to participate in both out-patient and in-patient 7 service. The stipulation recited that petitioner spend less than half of his time performing services ordinarily performed by staff pharmacists and petitioner attempted to explain or soften this by his testimony, but admitted that at least 20 percent of his time was so spent. In addition to all of the above it is undisputed that petitioner was required to and did agree to serve USPHS after completing his residency and that he honored such agreement. The major aspects of the instant case are indistinguishable from Jacob T. Moll, 57 T.C. 579 (1972). Also see and compare Frederick A. Bieberdorf, 60 T.C. 114 (1973). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954. ↩