NARENDRA S. THAKKAR and HEENA N. THAKKAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thakkar v. Commissioner
Docket No. 9042-73.
United States Tax Court
T.C. Memo 1975-292; 1975 Tax Ct. Memo LEXIS 80; 34 T.C.M. (CCH) 1262; T.C.M. (RIA) 750292; September 22, 1975, Filed Donald J. Meigs,Hilary G. Lynch, and Richard R. Carr, for the petitioners. Stephen R. Takeuchi and Robert J. Percy, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1971 in the amount of $900.25. The only issue for decision is whether an amount paid to Heena N. Thakkar as a stipend while she was serving an internship at Allegheny General Hospital constitutes a scholarship or fellowship grant within the meaning of section 117, I.R.C. 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Pittsburgh, *81 Pennsylvania at the time their petition in this case was filed. They filed a joint Federal income tax return for the calendar year 1971 with the District Director of Internal Revenue, Philadelphia, Pennsylvania on the cash method of accounting. Petitioners are permanent residents of the United States. Heena N. Thakkar (hereinafter referred to as petitioner) graduated from medical school in India and served one year of internship in that country prior to 1971. Also prior to 1971 petitioner passed the required examination given by the Educational Council for Foreign Medical Graduates and was issued a standard certificate, which was a prerequisite for eligibility for a foreign educated doctor to pursue further medical education in the United States of America. In order to practice medicine in the United States it was also necessary for petitioner as a person receiving her medical degree in a foreign country to fulfill a one-year internship program in an American hospital approved by both the American Medical Association and a state board of medical education and pass a state medical examination. In September of 1970 petitioner was accepted by Allegheny General Hospital as an intern *82 in rotating medicine. Allegheny General Hospital is and was in 1971 a private nonprofit corporation and a hospital approved for intern training by the Council on Medical Education of the American Medical Association. The requirements of the American Medical Association for certification of a hospital for approval for intern training are stated in its publication "Essentials of an Approved Internship." This publication sets forth the following as "guiding principle": 1. While the internship combines two functions--an educational period in the training of young physicians and a position rendering medical care and service to patients in hospitals and assistance to the staffs of hospitals--its educational function is of primary and paramount importance and its service function is secondary and incidental. 2. The service function of the internship should not be permitted to subordinate the educational purpose of the internship. 3. The educational function of the internship should be recognized as possessing a character of its own and should not be regarded as an additional year of medical school, nor as the first year of training for a specialty. 4. The internship should be so organized *83 and administered that it emphasizes the beginning and the progressive increase of the assumption of personal responsibility for the care of the sick, the recognition and the cultivation of the personal aspects of the treatment of patients, including family, social, financial, and morale factors, and the inculcation from first-hand experience of the principles of medical ethics and the code of professional conduct. 5. Hospitals unable or unwilling for any reason to conduct internships meeting the educational standards of the Council on Medical Education in the spirit of the foregoing statements should not attempt to establish internships and such internships will not be approved. These hospitals should seek to meet their service needs by establishing house officer positions with adequate salary provisions. This document set out in some detail the size requirement of a hospital, the departments which the hospital must have, the desirability of having a director of intern education in the hospital, the necessity for availability of suitable rooms for conferences and seminars, and other desirable features of the hospital certified for the internship program. As set forth in general *84 terms, requirements for a rotating internship and a straight internship provided as follows with respect to the duties of interns: Each intern caring for and in charge of patients should obtain and write or dictate the history, perform and record the results of the physical examination, and state his diagnosis on all patients assigned to him. He should perform laboratory work of such nature as will give him familiarity with and competence in the performance of those procedures which the practicing physician is ordinarily or usually called upon to perform. In addition, under adequate supervision he may be given some experience in the hospital laboratories with more complicated and difficult tests. He should be familiar with the proper use of such tests and the interpretation of the results. He should not be burdened by an excessive amount of routine procedures of limited educational value, nor should he be assigned to tasks of a non-professional nature. The non-operative and non-specialized treatment of each patient under his care is his responsibility under the critical guidance and supervision of the attending physician. Such supervision should be greater during the early stages *85 of his internship with increasing responsibility afforded the intern as his training progresses and his capabilities are demonstrated. He should make ward rounds with the attending and resident staffs at suitable intervals, preferably daily. At such times, he should visit the patients under his care and others, discussing their progress. He should receive instruction, information, criticisms, advice, suggestions, and assistance from his superiors, who thus contribute to his education. When serving on surgical services, he should attend operations to which he may be assigned. He should act in the capacity of an assistant, as directed by his superiors, thus attaining knowledge and experience with respect to operating room procedures and techniques. The intern should make frequent progress notes on the record describing the patient's clinical course and should record all treatment or special diagnostic procedures or make certain that they are promptly and correctly recorded. When a patient is discharged, the intern should write a concluding note which summarizes the patient's course in the hospital, describes the patient's condition as he leaves, and states the final diagnosis. *86 He should attend autopsies on his own and other patients, seminars, staff meetings, clinico-pathological and radiologic conferences, and meetings at which there is a discussion of patients' records subsequent to discharge. In those hospitals with emergency and outpatient services, he should be given assignments in which the basic principles of his professional duties are the same as those on the inpatient service. He should meet the family and friends of his patients and judiciously confer with them. He should consult with social service regarding the social, emotional, and environmental aspects of the patient's disease and the community resources available. An agreement was entered into between petitioner and Allegheny General Hospital which provided that it was effective from November 1, 1970 through October 31, 1971, but was later orally extended to the end of 1971. This agreement provided for a stipend to petitioner of $725 per month and for a housing allowance. It provided for coverage by the hospital of professional liability insurance for petitioner, for payment of premiums for her health insurance and basic life insurance coverage, for parking facilities and laundry service *87 furnished to petitioner, and for an annual paid vacation for petitioner of 2 weeks. It further provided for an allowance to petitioner of up to one week of educational leave for attendance or participation in educational meetings, with travel and other related costs paid by the hospital after approval for the meetings was obtained from the program director. Travel arrangements were to be made through the office of the associate executive director. The agreement also stated that petitioner agreed to the following: He will perform all duties and accept all assignments prescribed by the Program Director and/or his delegate. He will comply with all schedules, attend training and educational meetings and perform services in accordance with the standards outlined in Essentials of an Approved Residency/Internship, issued by the Council on Medical Education of the American Medical Association, as applicable. He will fulfill the obligations set forth, and comply with all other applicable Hospital policies and regulations. He will not accept appointment at, or employment with, any other Hospital, engage in outside remunerative work, or collect any fee for professional services rendered *88 during the period of this Agreement. During 1971 petitioner had 15 to 20 patients assigned to her at one time. She was responsible for interviewing the patients, giving them a thorough examination, and making the necessary record of her findings along with a diagnosis. She would then discuss the necessary treatment or further tests to be given the patients with a resident physician. Petitioner worked in the department of internal medicine, department of pediatrics, and in the emergency room during 1971. In these departments she was responsible for implementing treatments that had been decided upon by the physician and resident who also saw the patient. Petitioner was on-call 2 nights during the week and on certain weekends, and when on-call was required to be ready to handle or assist in handling emergencies. She generally would treat patients only after consultation with the resident physician or staff member, but where in her opinion the patient required a minor treatment she was permitted to give, she would give the treatment without consultation. Petitioner's day generally began at approximately 8:00 in the morning when she, with the resident, would make the rounds of the patients *89 assigned to her. Petitioner wrote up the patients' chart. After these rounds she would attend the morning report at which the staff physicians, residents, and interns would discuss the patients' condition and receive information from interns who were on-call as to any happenings to the patients during the night that should be brought to the attention of other interns and the staff physicians and residents. Approximately three times a week petitioner would also attend medical conferences conducted by Allegheny General Hospital and she would read medical books and journals and sometimes attend medical conferences given at other hospitals. Each first-year intern at Allegheny General Hospital received the same stipend without consideration to the financial need of the intern. After the first year, and each succeeding year, each intern and resident received the same additional amount of increase to his stipend. Allegheny General Hospital withheld F.I.C.A. taxes and Federal income taxes from petitioner's salary in 1971. Petitioner's stipend was paid from the general operating fund of the hospital, which consisted of money from self-paying patients, price-based reimbursers, and cost-based *90 reimbursers such as Medicare and Blue Cross plus miscellaneous receipts for parking, food, and the like. Self-paid patients were billed at a flat daily rate. In computing this rate the stipends paid to interns were included in the hospital's costs. It was the cost computed with these stipends included which was also used in determining the payments to be made by Blue Cross, Medicare, and Medicaid to Allegheny General Hospital for the care of patients. The primary purpose of Allegheny General Hospital is to treat patients, although in addition to its commitment to patient care it has the purpose of education, research, and community service. Education and research tend to improve patient care by the hospital. Petitioner was not licensed to practice medicine in 1971 and her services to patients were not billed directly to the patient as were a staff physician's services. The intern program was important to Allegheny General Hospital since the intern brought new knowledge to the hospital from medical school and it enabled the hospital to render better care to its patients. If Allegheny General Hospital had had no interns in 1971, it would have continued to render adequate patient *91 care by having a medical staff officer on-call and having other services provided by the intern furnished by other hospital staff, thus necessitating more work time of other hospital staff or additional staff. On-call duty of an intern or a doctor was necessary to proper patient care at Allegheny General Hospital. Petitioners reported the $7,800.03 received by petitioner as a stipend from Allegheny General Hospital on their 1971 Federal income tax return. On their income tax return petitioners excluded from income $3,600 and attached to their return a letter from the controller of Allegheny General Hospital, evidently to explain the exclusion as being a part of an amount received by petitioner as a stipend from the hospital. Respondent in his notice of deficiency increased petitioners' income as reported by this $3,600 exclusion with the explanation that it is determined that the amount of $3,600.00 received from Allegheny General Hospital as a medical trainee is not excludable under the provisions of section 117 of the Internal Revenue Code. ULTIMATE FINDINGS OF FACT The $7,800.03 received by petitioner from Allegheny General Hospital in 1971 was not *92 received as a scholarship or fellowship grant within the meaning of section 117. OPINION Section 117 provides that gross income of an individual does not include any amount received as a scholarship at an educational institution as defined in section 151(e)(4) or as a fellowship grant. It further provides that in the case of an individual who is not a candidate for a degree at an educational institution as defined in section 151(e)(4) the exclusion shall be limited to $300 per month. It is clear that Allegheny General Hospital was not an educational institution as defined in section 151(e)(4) since such institutions include only those institutions which normally maintain a regular faculty and curriculum and normally have a regularly organized body of students where its educational activities are carried on. Neither party contends otherwise, but both recognize that if petitioner is entitled to an exclusion it must be as a fellowship grant. Section 1.117-3(c), Income Tax Regs., provides that a fellowship grant generally means an amount paid or allowed to an individual to aid in the pursuit of study or research. Section 1.117-4, Income Tax Regs., entitled "Items not considered as *93 scholarships or fellowship grants," provides in subsection (c) that a scholarship or fellowship grant does not include an amount paid or allowed to an individual which represents compensation for services but that "if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for" services, past, present or future, then it shall be considered as a scholarship or fellowship grant. The Commissioner's regulations with respect to scholarships or fellowship grants have been specifically approved by the Supreme Court. Bingler v. Johnson,394 U.S. 741 (1969). Our question therefore here is whether under the facts of this case the payment made to petitioner by Allegheny General Hospital was for the primary purpose of furthering her education and training in her individual capacity or was primarily as compensation for her services to the hospital. Petitioner's position that the amount she received from Allegheny General Hospital was a fellowship grant is based principally on the description of the internship *94 program as set forth in the "Essentials of Approved Internship" and her testimony that in her hospital rounds with a resident and in her examination or treatment of patients she was receiving educational instruction. Petitioner would conclude from this evidence that the primary purpose of the payment to her by Allegheny General Hospital was for her education. Petitioner confuses the primary purpose of the intern program with the primary purpose of the payment to her by Allegheny General Hospital. In our view this record is clear that although Allegheny General Hospital complied with the requirements to remain certified for the intern program it made payments to its interns who were under that program primarily for the benefit of the hospital and for the services received from the interns. The fact is that there is no conflict between the education of the intern, which was the primary purpose of the intern program, and of petitioner in serving as an intern, and the primary purpose of the hospital in making the payment to obtain the services of the intern and thereby finding it unnecessary to keep staff physicians or some other personnel of the hospital available and on-call to perform *95 the services provided by the interns. This lack of conflict was clearly brought out in Hembree v. United States,464 F. 2d 1262 (4th Cir. 1972), where the Court said, at 1264-1265: On the facts of this case, however, we conclude that the district court erred in using the primary purpose of the hospital facility as the criterion for the test enunciated in the Regulations. It is not the purpose of the facility to which the Regulation refers but the primary purpose of the payment made to the taxpayer that is controlling. In Reese v. Commissioner of Internal Revenue, supra, this court upheld the tax court's conclusion that "the primary purpose test requires a determination of the raisond'etre of the payment." The arrangements under which Dr. Hembree served that portion of his internship and residency at MCSC had all of the indicia of an employer-employee relationship, and differed in no material respect from his service at the VA and County Hospitals. Witnesses, including the taxpayer, testified that the interns and residents performed valuable services for MCSC, and without them the hospital would have found it necessary to hire other doctors to carry on *96 its medical programs. Clearly, the raisond'etre of the payments from MCSC to Dr. Hembree was to compensate him for services performed for it. Under these circumstances, the fact that the institutional purpose of MCSC differed from the VA and County Hospitals is immaterial. In the instant case the primary purpose of Allegheny General Hospital in which petitioner served was to treat patients and petitioner was paid by the hospital for her services in that respect. However, the primary purpose of the hospital is not of paramount importance for here, as in the Hembree case it is clear that the primary purpose of the payment by the hospital to petitioner was for services and therefore the payments to her were quidproquo for these services. We have considered a number of cases involving services rendered by interns and of resident physicians and have uniformly held that stipends paid for services rendered by an intern or resident to a hospital comparable to the services rendered by petitioner in this case to Allegheny General Hospital was a payment for services and not a fellowship grant. Aloysius J. Proskey,51 T.C. 918 (1969); Irwin S. Anderson,54 T.C. 1547 (1970); *97 Frederick Fisher,56 T.C. 1201 (1971); and Jacob T. Moll,57 T.C. 579 (1972). Other courts have similarly held. See Wertzberger v. United States,441 F. 2d 1166 (8th Cir. 1971), affg. per curiam 315 F. Supp. 34 (W.D. Mo. 1970); Hembree v. United States,supra; and Parr v. United States,469 F. 2d 1156 (5th Cir. 1972). Although petitioner attempted to distinguish the numerous cases holding payments to interns and residents for services such as she performed from the facts in the instant case, we see no distinction. Petitioner performed for Allegheny General Hospital the normal services performed by an intern and received the $7,800.03 stipend in 1971 in return for these services. The cases cited by petitioner in support of her position are all distinguishable from the instant case on their facts and no purpose would be served by discussing these cases in detail. We hold that the $7,800.03 paid to petitioner by Allegheny General Hospital was not a scholarship or fellowship grant but was a payment for services. Decision will be entered for the respondent.
Footnotes
1. All references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩