MORGAN M. MCCOY, II, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCoy v. Commissioner
Docket No. 3422-74.
United States Tax Court
T.C. Memo 1975-330; 1975 Tax Ct. Memo LEXIS 44; 34 T.C.M. (CCH) 1435; T.C.M. (RIA) 750330; November 6, 1975, Filed Paul Garfinkle, for the petitioner. David W. Johnson, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in the amount of $1,440.50 in petitioner's income tax for the year 1971. At issue is whether petitioner is entitled to exclude $3,600 from gross income as a fellowship grant pursuant to section 117(a)(1)(B), I.R.C. 1954. FINDINGS OF FACT The parties have stipulated certain facts which, together with the attached exhibits, are incorporated herein by this reference. Morgan M. McCoy, II, the petitioner, resided in Philadelphia, Pennsylvania, *45 at the time the petition herein was filed. Petitioner was graduated from medical school in June of 1968. He immediately entered a rotating medical internship which he completed in June, 1969. He then began a residency in pathology at a Veterans Administration hospital in Pittsburgh, but during the second year of that residency he transferred to Shadyside Hospital, also in Pittsburgh. He completed his residency in pathology at Shadyside in June, 1973, after some two and a half years of additional service. During all of 1971, the year involved herein, petitioner was a resident at Shadyside. From January through June of that year, his status was that of a second-year resident; then, from July through December, he was a third-year resident. Shadyside Hospital is a non-profit institution which provides both patient care services and training programs for interns and residents. The hospital's pathology residency program has been fully approved for both anatomical and clinical pathology. Its department of pathology maintains an academic affiliation with the department of Pathology at the School of Medicine of the University of Pittsburgh. As part of this affiliation, hospital residents *46 in pathology normally participate for at least one year in the teaching program of the medical school. The hospital paid all residents, including petitioner, a monthly "stipend". The amount of the stipend depended on the level of training of the recipient. The regular hospital scale for residents was as follows: Level of Training
Scale Prior to 7/1/71
Scale as of 7/1/71
Resident -- 1st Year $650 per month $800 per month
Resident -- 2nd Year
675 per month
850 per month
Resident -- 3rd Year
700 per month
900 per month
Resident -- 4th Year
725 per month
950 per month During the first six months of 1971, while he was a second-year resident, petitioner was in fact paid $791.17 per month, the amount that he had been receiving from the Veterans Administration Hospital when he transferred to Shadyside. Beginning on July 1, 1971, when petitioner became a third-year resident and Shadyside adopted its new stipend scale, he was paid the amounts shown in the table above. Payments in the indicated amounts continued until he completed his training in June, 1973. Petitioner's stipend was paid from the same general hospital operating funds as were the salaries *47 of other hospital employees. The hospital withheld a portion of the stipend for Federal tax purposes without allowance for the $3,600 petitioner claims is excludable from gross income. All residents, including petitioner were covered by the hospital's professional liability insurance policy. In addition, he and other residents received two weeks vacation with pay each year. Residents provide extensive services to the hospital. Petitioner's duties as a pathology resident are described in detail in the exhibits titled, "Training Program" and "Academic Affiliation". In brief: petitioner performed autopsies and necropsy on surgical specimens; he prepared reports and made initial diagnoses based on these studies; and he participated in hospital conferences, seminars, and research projects. Also, as part of the hospital's affiliation with the medical school he taught a course for four months during 1971, devoting one day a week thereto; he was not separately compensated for these services. Dr. McCoy's duties, like those of many if not most pathologists, did not normally include direct contact with patients or direct responsibility for patient care. All of petitioner's work was supervised *48 by staff doctors senior to him. To perform his assigned duties, petitioner worked daily from 8:00 a.m. until 4:00 or 4:30 p.m., and he was on call during weekends. If petitioner and other pathology residents had not been available, the hospital would have had to hire additional staff pathologists. In determining the deficiency herein, the Commissioner ruled that "[Stipend] received is deemed to be for services rendered and therefore, not excludable under section 117". OPINION Section 117(a)(1)[1] permits a taxpayer to exclude from gross income amounts received "as a scholarship at an educational institution" or "as a fellowship grant". The exclusion allowed to a fellowship recipient who is not a candidate for a degree is limited by section 117(b)(2)(B) to $300 per month. [2] Petitioner is another of the throng of medical interns and residents who have claimed the benefit of this exclusion. With the decision rendered herein, petitioner joins those of his fellow practitioners whose claims have been denied. *49 The continuing litigation about section 117 has settled at least one general principle: When payments are given as compensation for services, those payments are neither scholarships nor fellowship grants. Stephen L. Zolnay,49 T.C. 389; Elmer L. Reese, Jr.,45 T.C. 407, affirmed per curiam 373 F. 2d 742 (C.A. 4). Section 1.117-4(c), Income Tax Regs., states this rule quite plainly.[3] The Supreme Court has upheld the regulations as "prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships'". Bingler v. Johnson,394 U.S. 741, 751. And this Court has consistently determined that payments received by medical interns and residents fall squarely in the category of compensation for services. E.g., Steven M. Weinberg, 64 T.C. ;Sheldon A. E. Rosenthal,63 T.C. 454. *50 Dr. McCoy's case is no different: All of the circumstances of petitioner's connection with Shadyside Hospital point to the conclusion that as a resident he was doing a job and being paid for it. He received a monthly cash "stipend", two weeks paid vacation per year, and professional liability insurance coverage under the hospital's policy. The amount of his monthly payment depended on his level of training. Payments based on experience rather than on need are likely to be compensation for services instead of fellowships. Sheldon A. E. Rosenthal,supra,63 T.C. at 460; Geral W. Dietz,62 T.C. 578, 586; Aloysius J. Proskey,51 T.C. 918, 924; Coggins v. United States,26 AFTR 2d 70-5775, 5780, 70-2U.S.T.C. par. 9687, 84, 756; cf. Robert Henry Steiman,56 T.C. 1350, 1355 (payment based on need implies fellowship). The hospital made payments to petitioner from its general operating fund -- the same fund that was used to pay the salaries of all staff physicians, nurses, and other hospital employees. And the hospital withheld Federal income and F.I.C.A. taxes from the whole amount of petitioner's *51 stipend, without allowing for any fellowship exclusion. Compare Steven M. Weinberg,supra, 64 T.C. at ,Jacob T. Moll,57 T.C. 579, 586, and Aloysius J. Proskey,supra,51 T.C. at 924, with Chander P. Bhalla,35 T.C. 13, 17-18. As a resident in pathology, Dr. McCoy made a substantial contribution to the hospital's ability to care for patients. He worked regular daily hours and was on call during certain weekends. If petitioner and other pathology residents had not been associated with Shadyside, the hospital would have had to hire additional staff pathologists to continue the same level of patient care. Specified duty hours and performing functions which would have to be done by replacements are well-recognized hallmarks of an employee. Steven M. Weinberg,supra, 64 T.C. at ;Frederick Fisher,56 T.C. 1201, 1213. Petitioner emphasized two elements of the pathology residency program which he felt minimized the benefit the hospital received from the work he did. He first pointed out that as a pathologist he was not generally in direct contact with living patients. While the fact is true, *52 the suggested inference is not. Petitioner did the normal work of a pathologist; his realm was the laboratory and the dissecting room. The studies and analyses he performed supported the practice of other physicians who were more visible to patients and laymen. Secondly, petitioner argues that because as a resident he worked under close supervision, with final responsibility for his actions vested in more senior doctors, the work he did was of insignificant value to the hospital. Once again, we accept the premise but reject the conclusion. Supervision is inherent in most employee-employer relationships. A superior watches over the work of a subordinate not because the subordinate's work has little independent worth, but specifically to insure that the work will be well done and, therefore, valuable. Frederick Fisher,supra,56 T.C. at 1213. In support of his claim for the exclusion, petitioner obtained a letter from Dr. Karl Franz, the Director of Medical Education at Shadyside Hospital, and attached the letter to his 1971 Form 1040. The letter purportedly described the relationship between the hospital and its residents. If accepted as accurate, the description *53 contained in the letter would be helpful to petitioner's case. Thus, the letter referred to the residency program as a "physician graduate training program", the primary purpose of which is "to further the education and training of the recipient", and stated that the amount paid by the hospital "does not represent compensation for services to patients nor does it serve the interest of the grantor". However, Dr. Franz's testimony before us went far towards depriving the letter of any persuasive force. He explained that a letter identical to the one presented by petitioner was given to each intern and resident who requested it. The letters were copied from a form in a magazine article, "Tax Tips for Hospital Doctors", and were created for the specific purpose of reducing the tax liabilities of those doctors who asked for them. Dr. Franz denied that the letter correctly reflected his view of the relationship between the services which the residents performed and the stipends which the residents were paid. He testified that the stipend was a salary which "the hospital pays * * * for services rendered". We find no significant differences between petitioner's services and those of other *54 interns and residents whose periodic payments have been held to represent compensation for services and not fellowship grants. Decision will be entered for the respondent.
Footnotes
1. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations * * * ↩
2. Petitioner does not dispute the fact that he was not a candidate for a degree, so that any exclusion to which he might be entitled would be limited to $3,600 for the 12 months of 1971.↩
3. Section 1.117-4(c), Income Tax Regs.
The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * * *
(c) Amounts paid as compensation for services or primarily for the benefit of the grantor.↩ (1) * * * any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.