RICHARD J. CUSICK and NORMA A. CUSICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cusick v. Commissioner
Docket No. 4888-77.
United States Tax Court
T.C. Memo 1982-135; 1982 Tax Ct. Memo LEXIS 605; 43 T.C.M. (CCH) 811; T.C.M. (RIA) 82135; March 22, 1982. Rogert J. Cusick, for the petitioners. H. Stephen Kesselman and Scott D. Anderson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge:* Respondent has determined deficiencies in petitioners' Federal income tax for the taxable years 1973, 1974 and 1975 in the amounts of $ 496.69, $ 565.05 and $ 310.77, respectively. The sole issue is whether amounts paid to petitioner Dr. Cusick by hospitals at which he worked as an intern or resident were scholarships or fellowship grants that may be excluded from gross income under section 117. [1]
*606 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Richard J. Cusick (hereinafter petitioner) and Norma A. Cusick, husband and wife, resided in Allentown, Pa., when they filed their petition in this case. They filed their joint 1973, 1974 and 1975 Federal income tax returns with the Internal Revenue Service Center, Philadelphia, Pa. In May 1972, petitioner received a degree of Doctor of Medicine from Albert Einstein College of Medicine. On April 24, 1972, he entered into a written agreement with the Staten Island Hospital, Staten Island, N.Y., to work as an intern for the period from July 1, 1972, through June 30, 1973. On December 27, 1972, petitioner entered into a written agreement with Sacred Heart Hospital, Allentown, Pa., to work as a resident in the hospital's Family Practice Residency Program from July 1, 1973, through June 30, 1974. On April 22, 1974, he entered into a written agreement with St. Luke's Hospital, Bethlehem, Pa., to work as a second-year resident in the hospital's Internal Medicine Residency Program from July 1, 1974, through June 30, 1975; *607 and on April 1, 1975, he entered into an oral agreement with Allentown General Hospital, Allentown, Pa., to work as a third-year resident in the hospital's Internal Medicine Program from July 1, 1975, through June 30, 1976. During the periods in which petitioner served at the several hospitals as an intern and thereafter as a resident, he was not registered as a student at any institution, paid no tuition, and was not a candidate for any degree. At all the hospitals at which he did his internship/residency training petitioner was in a trainee capacity. None of the hospitals imposed any requirement, explicit or implicit, for petitioner to stay beyond the agreed term of his residency or internship. All four internship/residency programs were designed to comply with the Essentials of Approved Internships and Residencies and were fully approved by the Council on Medical Education of the American Medical Association for the years in which petitioner participated in the programs. Internships and residencies are not educational courses leading up to a degree but are phases of medical education and training that follow the completion of the undergraduate medical curriculum, which *608 in petitioner's case was completed prior to the commencement of the internship at Staten Island Hospital. An internship is the phase of medical education and training that ordinarily follows immediately after the completion of the four-year undergraduate medical curriculum. It consists of the supervised practice of medicine among patients in a hospital and its outpatient department, with continued instruction in the science and art of medicine by the hospital staff. A purpose of the American Medical Association's requirement of a period of intership is to allow the doctor to pu into practice the principles of preventive medicine, diagnosis, therapy, and the management of patients that he or she learned in medical school. Usually, an internship is followed by a residency, which is a period of advanced training lasting from one to five years, that the doctor must complete if he or she wishes to be certified in a specialty or subspecialty. The general program of petitioner while a resident was prescribed by the accrediting bodies and specialty boards that govern medical education. Each approved residency program consisted of patient care activities coordinated with a variety of teaching *609 and educational activities designed to develop the resident's clinical judgment and proficiency in clinical skills. The terms of the agreements petitioner made with Staten Island Hospital and Sacred Heart Hospital were quite similar. Each hospital agreed to provide Dr. Cusick with compensation ($ 10,800 at Staten Island Hospital; $ 12,000 at Sacred Heart Hospital), payable biweekly; paid vacation (three weeks at Staten Island Hospital; two weeks at Sacred Heart Hospital); twelve days' paid sick leave; free living quarters on the hospital premises; free meals in the hospital cafeteria during duty hours; health insurance (at minimal cost to petitioner at Staten Island Hospital and at no cost at Sacred Heart Hospital); professional liability insurance; and uniforms. Staten Island Hospital also agreed to pay petitioner a quarters allowance of $ 125 per month if he chose to live off premises and to provide disability and workers' compensation insurance. Sacred Heart Hospital agreed to pay petitioner's travel expenses to an approved medical meeting plus $ 30 per day expense allowance up to one week per year. Under each of these written agreements, petitioner agreed to comply with *610 the bylaws, rules, and regulations of the hospital and its medical staff and with the directions of the hospital's director, attending staff, and the senior resident to whom petitioner was assigned; to accept no fees from patients; to refrain from private practice or outside professional activity unless approved by the hospital's director; to perform his duties during the hours directed; and to rotate through medical services as assigned. The written agreement between St. Luke's Hospital and petitioner was less comprehensive than the other two written agreements. Under this agreement, St. Luke's agreed to pay petitioner a salary of $ 1,065.80 per month and to provide him with two weeks' paid vacation and health and professional liability insurance coverage. Petitioner agreed to work during hours of duty approved by the Chief of Service; to perform satisfactorily and to the best of his ability the customary services of a resident; to conform to hospital policies, procedures, and regulations governing residents; and to obtain a license or certificate or to register to practice medicine in Pennsylvania. Under its oral agreement with petitioner, Allentown General Hospital agreed *611 to pay a stipend of $ 13,000 for the one-year residency and to provide two weeks' paid vacation and health and professional liability insurance. Petitioner's duties as an intern at Staten Island Hospital included writing patient histories, performing physical examinations, making ward rounds with attending and resident physicians, visiting patients, writing discharge notes, and discussing patient diagnoses and treatments with attending and resident physicians. While he was serving as an intern, petitioner saw approximately 8 to 12 patients per day, with the number varying depending on the type of medical service to which he was assigned. Petitioner was also subject to call at all times except when specifically off duty, and even then arrangements were made to ensure his prompt availability if called. He was specifically on call every third night and every third weekend. When petitioner served as a resident at Sacred Heart Hospital, St. Luke's Hospital and Allentown General Hospital his duties included taking medical histories, performing examinations, preparing medical records and charts, developing diagnostic and therapeutic plans, participating in service rounds, and assisting *612 in surgical procedures. At Allentown General Hospital petitioner also taught, prepared conferences, and conducted science library research. During the one-year term of his residency at Sacred Heart Hospital, petitioner was assigned 83 inpatients and saw approximately 18 to 20 outpatients each week. At St. Luke's Hospital, he was assigned 98 inpatients during the course of his residency, seeing approximately 9 to 10 each day. He also saw approximately 9 to 12 outpatients each week and spent approximately three hours per week seeing these outpatients. While a resident at Allentown General Hospital, petitioner was assigned 120 inpatients during the year, and also saw approximately 10 to 12 outpatients each week. He spent approximately four hours per week seeing these outpatients. At each of the hospitals, petitioner was on duty for over 100 hours per week. He spent approximately 25 hours per week with patients, and spent substantial amounts of time in other patient care activities not involving direct contact with patients, such as preparing medical records and charts, developing diagnostic and therapeutic plans, and discussing diagnoses and treatments with attending and resident *613 physicians. The amount of the stipends paid to interns and residents by each of the four hospitals was not based on the individual intern or resident's financial needs or number of dependents. Nor was the amount determined according to the hours spent at the hospital, the number of patients treated, the frequency of treatment, the particular departments involved, or the length of time the intern or resident was attached to a particular department. Furthermore, all four hospitals withheld Federal, State and local income, and Federal Insurance Contributions Act taxes on the full amount of the stipends. ULTIMATE FINDINGS OF FACT The amounts paid to petitioner by Staten Island Hospital, Sacred Heart Hospital, St. Luke's Hospital, And Allentown General Hospital in 1973, 1974 and 1975 were compensation for services to these hospitals. OPINION Section 117(a)(1) excludes from gross income any amount received as a scholarship at an educational institution or as a fellowship grant. Section 1.117-4(c), Income Tax Regs., specifies that amounts paid as compensation for employment services shall not be considered as scholarships or fellowship grants. The Supreme Court has specifically *614 upheld the validity of this regulation, stressing that "the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Bingler v. Johnson,394 U.S. 748, 751 (1969). Thus, under section 1.117-4(c), Income Tax Regs., as interpreted by the Bingler opinion, the ultimate issue to be resolved here is whether there is any substantial quidproquo, i.e., whether the stipends were paid to petitioner as compensation for services he rendered to the hospitals. Time and again this Court has been asked to rule that payments to interns or residents are excludable from income under section 117, and almost without exception, we have found these payments not to qualify as scholarships or fellowship grants because they are compensatory in nature. See, e.g., Adams v. Commissioner,71 T.C. 477 (1978); *615 Weinberg v. Commissioner,64 T.C. 771 (1975); Rosenthal v. Commissioner,63 T.C. 454 (1975). The cases of Bailey v. Commissioner,60 T.C. 447 (1973), and Bieberdorf v. Commissioner,60 T.C. 114 (1973), are not in conflict, since each of these cases turns on its unique facts. Because internship and residency programs must accord with the Essentials of Approved Internships and Residencies and must be approved by the Council on Medical Education of the American Medical Association, they all tend to have the same basic characteristics, and we have found that these common characteristics exhibit the compensatory nature of the payments to interns and residents. Petitioner can establish his right to exclude the payments at issue here only if he can present sufficient facts to distinguish the terms of his internship and residencies from the scores of other internships and residencies that we have previously found to involve payments that were compensatory in nature. Petitioner has completely failed to do so. Applying the quidproquo test here, it is apparent that each of the hospitals received substantial *616 services from petitioner in return for the payments made to him. Both as an intern at Staten Island Hospital, and as a resident at Sacred Heart Hospital, St. Luke's Hospital, and Allentown General Hospital, petitioner engaged in significant patient care activities, both directly and indirectly. At trial, petitioner testified that during his intership and residencies he spent approximately 25 percent of his time servicing hospital patients directly. He conceded that he was an employee during such times. He contends, however, that 75 percent of the payments to him, which correspond to the 75 percent of his duty hours that were not spent "servicing hospital patients," qualify for exclusion under section 117 despite his concession that he was an employee with respect to the other 25 percent of the amounts paid to him. In estimating his patient servicing activities petitioner only considered direct patient contacts and did not include the extensive work performed for the hospital outside the presence of the patients. Work benefiting the hospital that did not involve patient contact included preparing medical records and charts, developing diagnostic and therapeutic plans, and discussing *617 diagnoses and treatments with other physicians. Furthermore, the hospitals benefited substantially by simply having petitioner available on an on-call basis, particularly during nighttime and weekends. Only a few of the activities of petitioner, such as attending conferences and lectures, could possibly be characterized as not benefiting the hospitals, and these activities are deemed minimal. Because most of petitioner's activities as an intern or resident substantially benefited the hospital, it is clear that the payments he received from the hospitals were designed to be compensation for services rendered. Many of the characteristics of the internship and residency programs provide further evidence of the compensatory nature of the payments. The written agreements that Staten Island Hospital and Sacred Heart Hospital made with petitioner used the terms "employed" and "employment" and referred to the payments as "compensation," and the written agreement between St. Luke's Hospital and petitioner referred to the payments as "salary." All four hospitals withheld Federal, State and local income and Federal Insurance Contributions Act taxes on the full amount of the stipends. *618 The employer's treatment of the employee is a major factor indicating whether the employer was making the payments as compensation. Parr v. United States,469 F.2d 1156, 1158 n.5 (5th Cir. 1972); Adams v. Commissioner,supra at 487; Moll v. Commissioner,57 T.C. 579, 586 (1972). Another major factor indicating that the payments were not scholarships or fellowship grants is that the amounts paid to petitioner by each of the hospitals were not based on his financial needs or on the number of his dependents but that the amount of compensation rose with the level of experience. Adams v. Commissioner,supra at 487; Fisher v. Commissioner,56 T.C. 1201, 1213 (1971). Still another factor indicating that all four hospitals considered the payments to be compensation was that petitioner was entitled to a paid vacation, health insurance and professional liability insurance. At Staten Island Hospital and Sacred Heart Hospital, petitioner was also entitled to sick leave. The provision of such fringe benefits has been recognized as evidence of a compensatory motive. *619 Adams v. Commissioner,supra at 487; Anderson v. Commissioner,54 T.C. 1547, 1552 (1970). Additional factors indicating that the payments by Staten Island Hospital and Sacred Heart Hospital were not scholarships or fellowships are that petitioner was not allowed to engage in outside employment unless he obtained approval and that his patient care activities were carried out under the supervision of a staff physician at all times, which is indicative of an employer-employee relationship. Woddail v. Commissioner,321 F.2d 721, 727 (10th Cir. 1963), affg. a Memorandum Opinion of this Court; Weinberg v. Commissioner,supra at 777, 779; Fisher v. Commissioner,supra at 1212. Petitioner placed considerable reliance upon the decision of the National Labor Relations Board in Cedars-Sinai Medical Center,223 NLRB No. 57 (1976), in which, for collective bargaining purposes, medical residents and interns were found to be students rather than employees. However, the NLRB decision is not binding on this Court and its determination has no bearing upon the tax issues involved here. *620 [2]
We conclude that, in general, participation by a doctor in any internship or residency program that accords with the "Essentials of an Approved Internship" or the "Essentials of Approved Residencies" as established by the American Medical Association constitutes employment by the hospital involved and payments received are taxable compensation. Thus, the payments petitioner received from the hospitals were compensation for services rendered and under section 117 are not excludable from income as scholarships or fellowship grants. Decision will be entered for the respondent.
Footnotes
*. This case was tried before Judge Cynthia H. Hall, who subsequently resigned from the Court. By Order of the Chief Judge, dated January 13, 1981, this case was reassigned to Judge Meade Whitaker↩ for disposition. 1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. See Saber v. Commissioner.T.C. Memo. 1981-477; Tsou v. Commissioner,T.C. Memo. 1980-100; and Woodling v. Commissioner,T.C. Memo. 1976-391↩.