KELLY L. SORENSEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sorensen v. Commissioner
Docket No. 15086-80.
United States Tax Court
T.C. Memo 1982-513; 1982 Tax Ct. Memo LEXIS 223; 44 T.C.M. (CCH) 1055; T.C.M. (RIA) 82513; September 13, 1982. *223 Petitioner was a pathology resident at the Northwestern University Medical School. As a member of the house staff of Northwestern University, he was assigned to two hospitals during 1977. As part of his duties as a pathology resident, petitioner was required periodically to be on call and to perform autopsies. His position also had additional characteristics of a compensatory arrangement. Held, the primary purpose underlying the payment was to compensate petitioner for services rendered and not to educate him. Therefore, petitioner's exclusion claimed pursuant to sec. 117, I.R.C. 1954, is denied. Kelly L. Sorensen, pro se. David D. Dahl, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated May 8, 1980 respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1977 in the amount of $929. The sole issue for decision is whether amounts paid to petitioner while serving as a pathology resident during the taxable year in question are excludable from petitioner's income on the basis that they qualify as a fellowship grant or scholarship pursuant to section 117, I.R.C. 1954. FINDINGS OF *224 FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Chicago, Illinois at the time of filing the petition herein. He filed an individual Federal income tax return for the taxable year in question with the Office of the Director, Internal Revenue Service Center, at an unspecified location. Petitioner graduated from Northwestern University Medical School in June 1976. Beginning in July 1976 he entered a 4-year residency program in pathology at Northwestern University Medical School. [1] During the period from July 1976 through June 1980 petitioner was a member of the house staff of Northwestern University. As such, he was assigned to the Veterans Administration Lakeside Hospital and Northwestern Memorial Hospital during the taxable year 1977. Between June 29, 1976 and June 30, 1977 petitioner performed services under a graduate clinical training agreement with the McGaw Medical Center of Northwestern University. Petitioner worked under the house staff policies and guidelines compiled by the Division of Graduate Medical Education, Northwestern University, *225 during the taxable year 1977. Petitioner's duties and responsibilities as a pathology resident consisted of services in the two broad areas of anatomic and clinical pathology. This included work in cytology, electron microscopy and autopsy. Specific activities engaged in by petitioner included performing tests on tissues, microscopic examination of tissues, participation in autopsies, aiding in the preparation of examination reports, research into testing procedures and testing results, attendance at lectures, and rotations through laboratories for the purpose of viewing tests and test reactions. Petitioner was periodically on call during weekends and holidays. House staff appointees from Northwestern were entitled to receive stipend checks from Northwestern University, Veterans Administration Lakeside Hospital, and from hospitals outside of McGaw Medical Center. The amount paid to petitioner during 1977 as a member of the house staff was not determined with respect to petitioner's financial need. This amount increased each year during petitioner's residency training. As a house staff member, petitioner was provided professional liability *226 insurance as well as medical uniforms at no charge. As a house staff member, petitioner received 14 calendar days of paid vacation in his first year residency and 21 days of paid vacation per year after completion of his first year of residency. Petitioner also was allowed 14 days of paid sick leave per year during his residency. Petitioner was not a candidate for an advanced degree in medicine but rather, at the conclusion of his residency, was qualified to take the board examination for certification. During the year in question petitioner was paid a total of $14,938.34 as a pathology resident on the house staff. [2] Of this amount, petitioner excluded $3,600 from his income on his 1977 income tax return pursuant to section 117. Respondent denied the claimed exclusion. OPINION The sole issue for our decision is whether the stipend payments received by petitioner during 1977 qualify for exclusion from gross income pursuant to section 117. Section 117(a) excludes from the gross income of an individual any amount received as a scholarship or fellowship grant. In the case of an individual *227 who is a candidate for a degree, this exclusion is delimited by section 117(b)(1). However, such limitation, and the exception contained therein, is only applicable if the payment in question first has been found to constitute a scholarship or fellowship grant. Reese v. Commissioner,45 T.C. 407, 413 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). The terms "scholarship" and "fellowship grant" are not defined in the statute. Section 1.117-3(c), Income Tax Regs., defines "fellowship grant" as an amount "paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." See Weinberg v. Commissioner,64 T.C. 771, 776 (1975); Reese v. Commissioner,supra at 411. The regulations define "scholarship" in a similar manner. Sec. 1.117-3(a), Income Tax Regs.
The test to be applied is whether the primary purpose underlying the payment was to educate the recipient or whether it was to compensate him for services rendered. Weinberg v. Commissioner,supra at 776. Thus, if an amount paid "represents either compensation for past, present, or future employment services," then such amount is not to be considered as an amount received as a scholarship *228 or fellowship grant for purposes of section 117. Sec. 1.117-4(c)(1), Income Tax Reg. The validity of section 1.117-4(c), Income Tax Regs., was upheld in Bingler v. Johnson,394 U.S. 741, 751 (1969), wherein the Supreme Court declared: [T]he definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarship" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial quid pro quo from the recipients. Accordingly, our inquiry is reduced to whether the stipends paid to petitioner were intended primarily to be in return for his services, past, present or future, or whether they were intended to furnish him an opportunity to pursue research for his own individual benefits. Petitioner bears the burden of proof in this respect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The issue of the includability in gross income of monies paid to a medical intern or resident frequently has been litigated in recent years with the almost invariable outcome of such litigation going against the taxpayer-physician. See, *229 e.g., Birnbaum v. Commissioner,474 F.2d 1339 (3d Cir. 1973), affg. without published opinion a Memorandum Opinion of this Court; Parr v. United States,469 F.2d 1156 (5th Cir. 1972); Hembree v. United States,464 F.2d 1262 (4th Cir. 1972); Rundell v. Commissioner,455 F.2d 639 (5th Cir. 1972), affg. per curiam a Memorandum Opinion of this Court; Wertzberger v. United States,441 F.2d 1166 (8th Cir. 1971); Woddail v. Commissioner,321 F.2d 721 (10th Cir. 1963), affg. a Memorandum Opinion of this Court; Yarlott v. Commissioner,78 T.C. 585 (1982); Weinberg v. Commissioner,supra;Dietz v. Commissioner,62 T.C. 578 (1974); Moll v. Commissioner,57 T.C. 579 (1972); Fisher v. Commissioner,56 T.C. 1201 (1971); Anderson v. Commissioner,54 T.C. 1547 (1970); Proskey v. Commissioner,51 T.C. 918 (1969). The Courts in these cases all concluded that because the intern or resident furnished valuable services for the grantor of the fellowship in return for the payments received, such payments were compensatory and therefore includable in income. As a part of his duties and responsibilities, petitioner was required to perform substantial services in return for the amounts paid him. Not only *230 was he periodically required to be on call during weekends and holidays, but he also was required to perform autopsies during the year in issue. [3] The amount of the payments petitioner received in 1977 was based upon length of service, not individual need. This is characteristic of a compensatory arrangement. Yarlott v. Commissioner,supra at 602; Adams v. Commissioner,71 T.C. 477, 487 (1978). Also indicative of such an arrangement is the fact that Federal income and FICA taxes were withheld from petitioner's income, Adams v. Commissioner,supra at 487, and the fact that petitioner received paid vacation leave, paid sick leave, professional liability insurance, and other fringe benefits. See Rosenthal v. Commissioner,63 T.C. 454, 460 (1975). We note that this Court has denied the section 117 exclusion to a number of pathology residents in the past. [4] Once again, we find that the primary purpose underlying the payment was to compensate petitioner for services rendered and not to educate him. Therefore, petitioner's claimed exclusion is denied.
*231 Decision will be entered for the respondent.
Footnotes
1. He completed this program in June of 1980.↩
2. According to petitioner's W-2 Form Federal income and FICA taxes were withheld from this amount.↩
3. See Bharmota v. Commissioner,T.C. Memo. 1979-28↩.
4. See Bharmota v. Commissioner,supra;Swart v. Commissioner,T.C. Memo. 1978-38; McCoy v. Commissioner,T.C. Memo. 1975-330↩.